**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER CLAYTON SMITH,<br>And MATTHEW BLAKE FULLER<br><br>Plaintiffs,<br><br>v.<br><br>MACON-BIBB COUNTY, SHERIFF DAVID DAVIS in his Individual and Official capacity, and CLAYTON SMITH, CEDRIC PENSON, FREDERICK GRAY, TIMORTHY JONES, SCOTT DAVIS, JOSEPH M. CALLAWAY, JEREMY HOLMES, And QUENTIN JACKSON Each in their Individual Capacities<br><br>Defendants. | ) | Civil Action No.: ________________<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR VIOLATIONS OF 42 U.S.C. § 1983, DECLARATORY AND INJUNCTIVE RELIEF, AND DAMAGES**

Plaintiff Christopher Clayton Smith and Plaintiff Matthew Blake Fuller (hereinafter "Plaintiffs") file this Complaint for damages, declaratory relief, and injunctive relief pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and show the Court as follows:

## INTRODUCTION

1. This civil-rights action arises from a recurring course of conduct by Macon-Bibb County law-enforcement officers who repeatedly threatened, cited, arrested, and prosecuted Plaintiffs for engaging in religious preaching on public sidewalks while using a sound amplification device, even though Macon-Bibb County Code § 15-26[1] expressly excludes from the noise prohibitions the reasonable use of amplifiers or loudspeakers during noncommercial public addresses.

2. Plaintiffs are Christian ministers and street preachers who regularly speak, preach, and distribute religious messages in traditional public fora in downtown Macon. Their speech is noncommercial and religious in character.

3. The challenged conduct did not arise from a single misunderstanding. By the time of the final arrest on March 29, 2025, Macon-Bibb officers and supervisors had repeatedly confronted Plaintiffs about the same activity, had arrested Plaintiff Smith on September 28, 2024, cited Plaintiff Fuller on December 14, 2024, and been shown and told about the ordinance exception, had received a formal written complaint concerning the same issue, and had nevertheless continued to treat Plaintiffs' reasonable amplified preaching as unlawful.

[1] Hereinafter referred to simply as § 15-26.

4. The three principal enforcement episodes at issue are: (a) the September 28, 2024 arrest and prosecution of Plaintiff Smith based on his refusal to stop protected amplified religious speech; (b) the December 14, 2024 citation and prosecution of Plaintiff Fuller for use of an amplifier while preaching and chilling of Plaintiff Smith's speech by threat of citation/arrest; and (c) the March 29, 2025 arrests and prosecutions of both Plaintiffs for disorderly conduct and criminal trespass while they were preaching during the Cherry Blossom Festival in downtown Macon.

5. These incidents were preceded by events in which agents of Bibb County's Sheriff's Office threatened Plaintiff Smith with arrest and jail for using an amplifier while preaching. Smith filed a formal complaint. The complaint was investigated and rejected, thereby placing supervisory personnel on notice of the challenged interpretation and enforcement practice before the later arrests and prosecutions occurred.

6. Plaintiffs seek relief for violations of the First and Fourth Amendments, including retaliation for protected speech and petitioning activity, viewpoint-based suppression, unconstitutional prior restraints, unlawful seizures and arrests, malicious prosecution, and excessive force. Plaintiffs also seek municipal liability against Macon-Bibb County and Sheriff David Davis based on their own policies,

customs, practices, ratification, and deliberate indifference, to the extent those policies and practices are attributable to the consolidated government or the Sheriff under 42 U.S.C. § 1983, as they are unconstitutional practices and policies.

## JURISDICTION AND VENUE

7. This Court has concurrent jurisdiction over Plaintiffs' claims arising under 42 U.S.C. § 1983 and the First, Fourth, and Fourteenth Amendments to the United States Constitution.

8. Plaintiffs seek attorney's fees and litigation expenses under 42 U.S.C. § 1988.

9. Venue is proper in Macon-Bibb County because the acts and omissions giving rise to the claims occurred in Macon-Bibb County, Defendant Macon-Bibb County is located here, and multiple individual Defendants worked for the Bibb County Sheriff's Office and acted here at all relevant times.

## PARTIES

10. Plaintiff Christopher Clayton Smith is a Georgia resident and Christian minister who regularly engages in street preaching and religious public-address activity in Macon-Bibb County.

11. Plaintiff Matthew Blake Fuller is a Georgia resident and Christian minister who regularly engages in street preaching and religious public-address activity in Macon-Bibb County.

12. Defendant Macon-Bibb County, Georgia, is the consolidated local government for Macon and Bibb County. Plaintiffs sue Macon-Bibb County under 42 U.S.C. § 1983 for unconstitutional policies, customs, practices, ratification, and deliberate indifference that were a moving force behind the violations alleged herein.

13. Defendant Clayton Smith was at all relevant times a sworn officer of the Bibb County Sheriff's Office. The records identify him as a Sergeant during the December 14, 2024 incident and as a Lieutenant during the March 29, 2025 incident. He is sued in his individual capacity for damages and other relief. He may be served at 224 PRIMITIVE RD, JEFFERSONVILLE, GA 31044.

14. Defendant Cedric Penson was at all relevant times a Lieutenant or supervisory officer of the Bibb County Sheriff's Office and participated in the September 28, 2024 arrest and prosecution of Plaintiff Smith. He is sued in his individual capacity for damages and other relief. He may be served at 1565 LAWTON AVE, MACON, GA 31201.

15. Defendant Frederick Gray was at all relevant times a deputy with the Bibb County Sheriff's Office and participated in the September 28, 2024 incident, including but not limited to transporting Plaintiff Smith. He is sued in his individual capacity for damages and other relief. He may be served at 399 PLANTATION WAY APT 1203, MACON, GA 31210.

16. Defendant Timorthy Jones was at all relevant times a Sergeant with the Bibb County Sheriff's Office and participated in the March 29, 2025 arrests. He is sued in his individual capacity for damages and other relief. He may be served at 6687 SKIPPER RD APT 404, MACON, GA 31216.

17. Defendant Scott Davis was at all relevant times a supervisory officer with the Bibb County Sheriff's Office, identified by Plaintiffs as a Lieutenant during the December 14, 2024 incident and a Captain during the March 29, 2025 incident. He approved, endorsed, supervised, or ratified the challenged enforcement actions. He is sued in his individual capacity for damages and other relief. He may be served at 5095 SMOKE RISE DR, MACON, GA 31210.

18. Defendant Joseph M. Callaway was at all relevant times a deputy with the Bibb County Sheriff's Office and participated in the September 28, 2024 incident. He is sued in his individual capacity for damages and other relief. He may be served at 106 MARYJAY DR, WARNER ROBINS, GA 31088.

19. Defendant Jeremy Holmes was at all relevant times a deputy with the Bibb County Sheriff's Office and participated in the September 28, 2024 incident. He is sued in his individual capacity for damages and other relief. He may be served at 123 MONTICELLO DR, BYRON, GA 31008.

20. Defendant Quentin Jackson was at all relevant times a corporal or supervisory officer with the Bibb County Sheriff's Office and participated in the September 28, 2024 incident. He is sued in his individual capacity for damages and other relief. He may be served at 6229 THOMASTON RD APT 1009, MACON, GA 31220.

21. Defendant David Davis is the Sheriff of Macon-Bibb County and a final policymaker for the Bibb County Sheriff's Office. He is sued in his individual capacity for damages and other relief, as well as in his official capacity as he was setting unconstitutional policies and practices that led to unconstitutional acts by subordinates that he was supervising or responsible for. He may be served at the Sheriff's Department at 668 Oglethorpe St, Macon, GA 31201.

22. At all times relevant to this action, the individual Defendants acted under color of law and within the course and scope of their purported government authority.

## FACTUAL ALLEGATIONS

### A. Macon-Bibb County Code § 15-26 and Plaintiffs' Protected Activity

23. Macon-Bibb County Code § 15-26 regulates noise. Subsection (c) provides that the foregoing noise prohibitions shall not apply to or be enforced against certain activities, including "[t]he reasonable use of amplifiers or loudspeakers in the course of public addresses which are noncommercial in character."

24. The same ordinance separately restricts the use of loudspeakers and amplifiers on streets, sidewalks, parks, and other public places **before 7:00 a.m. and after 10:00 p.m**. Plaintiffs' challenged preaching occurred during hours in which that time restriction did not prohibit their conduct.

25. Plaintiffs' preaching was a noncommercial public address concerning religion and matters of public concern. Public sidewalks and streets are traditional public fora in which speech receives the highest First Amendment protection.

26. Plaintiffs repeatedly explained the ordinance and its express noncommercial public address exception to the Bibb County officers. Rather than objectively apply the ordinance, officers repeatedly treated use of an amplifier itself as unlawful, permit-dependent, and grounds for arrest, even when Plaintiffs were otherwise peaceful and compliant.

**B. Prior Notice to Bibb County, Formal Complaint, and Notice to Supervisors**

27. On January 16, 2024, Plaintiff Smith submitted a formal written complaint to the Bibb County Sheriff's Office describing an incident that occurred on December 15, 2023 in which Plaintiff Smith was preaching in compliance with the law, identifying the ordinance exception, and complaining that the officers had imposed an unconstitutional prior restraint on religious speech by harassing him.

28. The Sheriff's Office opened Internal Affairs matter CC24005BP. The investigative materials show that the complaint and Plaintiff Smith's detailed explanation of § 15-26 were circulated through supervisory channels, including an investigative review by Major Gregory Rachel and final review by senior command staff.

29. On or about August 7, 2024, the Sheriff's Office advised Smith that the complaint concerning Captain Collins had been investigated and that the officer had followed Sheriff's Office policy. The final review marked the allegation "Not Sustained."

30. Thus, before the September 2024, December 2024, and March 2025 enforcement actions, the Sheriff's Office and its supervisory chain had actual notice that officers were interpreting § 15-26 to prohibit or require a permit for the

same noncommercial amplified religious speech that the ordinance expressly exempts from the foregoing noise prohibitions.

**C. September 28, 2024 Arrest and Prosecution of Christopher Smith**

31. On September 28, 2024, Plaintiff Smith was again engaged in religious preaching and public address activity in Macon-Bibb County using an amplifier.

32. Defendant deputies Frederick Gray, Joseph M. Callaway, Jeremy Holmes, Corporal Quentin Jackson, and Lieutenant Cedric Penson participated in the encounter.

33. Defendants ordered Plaintiff Smith to stop using the loudspeaker. Plaintiff Smith maintained that his conduct was protected and compliant with the local ordinance. Plaintiff Smith remained peaceful, did not physically interfere with any officer, and did not commit any act that obstructed or hindered an officer in the lawful discharge of official duties.

34. Defendants nevertheless seized and arrested Smith. Smith was booked into jail and prosecuted.

35. While in booking after the arrest, Plaintiff Smith suffered a seizure. He was transported to an emergency room, where medical charges of approximately $1,870 were incurred. Smith also lost wages attending court and suffered

humiliation, anxiety, loss of sleep, reputational harm, and concern regarding his employment and security clearance.

36. On February 4, 2025, the charges against Plaintiff from the September 28, 2024 arrest were dismissed and the proceedings terminated in Plaintiff's favor.

37. The September 28 arrest and prosecution occurred after the Defendant Bibb County's Sheriff's Office had investigated and rejected Smith's formal complaint concerning the same recurring dispute over amplified religious speech.

**D. December 14, 2024 Citation and Prosecution of Matthew Fuller**

38. On December 14, 2024, at approximately 6:10 p.m., Plaintiffs were preaching at or near Third Street and Poplar Street in downtown Macon.

39. Defendant Clayton Smith, then a Sergeant, responded to a noise complaint. His own narrative states that he observed two men next to a speaker and one man preaching about Jesus through a microphone.

40. Sergeant Smith told Plaintiffs that they could preach but could not use the speaker, and repeatedly threatened that continued amplifier use would result first in a citation and then in arrest.

41. When Plaintiff Christopher Smith stopped using the speaker, Plaintiff Fuller began preaching through the microphone. Defendant Smith cited Plaintiff Fuller for a noise violation. The incident report identifies the offense as a

nuisance/noise violation and the narrative expressly references Macon-Bibb County Code § 15-26.

42. Plaintiffs' use of the amplifier was reasonable, occurred before 10:00 p.m., was noncommercial, and fell within the express public-address exception in § 15-26(c).

43. Plaintiffs further believe that Defendant Scott Davis, then serving in a supervisory capacity, approved, endorsed, or ratified the citation and threatened arrest if Fuller continued preaching with amplification.

44. The citation was later dismissed or otherwise terminated in Fuller's favor. Despite that favorable termination, the enforcement episode reinforced the ongoing threat that Plaintiffs would be cited or arrested whenever they used reasonable amplification for religious preaching.

**E. March 29, 2025 Arrests and Prosecutions of Both Plaintiffs**

45. On March 29, 2025, during the Cherry Blossom Festival in downtown Macon, Plaintiffs were engaged in religious preaching near Third Street and Cherry Street using a loudspeaker.

46. Defendant Clayton Smith, then a Lieutenant, responded after receiving complaints from Cherry Blossom personnel and nearby business owner Scott Mitchell.

47. Defendant Smith's own narrative states that he initially asked Fuller to turn down the speaker and that Fuller complied.

48. Defendant Smith then contacted the Bibb County State Court Solicitor's Office. His report memorializes that the solicitor advised, in substance, that if Fuller had complied and was not causing a disturbance, then he was fine.

49. After the call, Defendant Smith received additional complaints. The complaints included objections to Plaintiffs' presence and message, including a demand that Plaintiff Fuller leave the area while holding a sign concerning abortion and other religious or political speech.

50. Defendant Smith instructed Plaintiff Fuller to move across the street. Fuller complied by moving across the street and remained on a public sidewalk. Defendant Smith then requested another deputy, and Defendant Timorthy Jones arrived.

51. While waiting for Defendant Jones, Plaintiff Fuller handed the microphone to Plaintiff Christopher Smith. Fuller walked across the street and stood on the sidewalk in front of the Dempsey Apartment Homes at 523 Cherry Street while continuing to display a sign.

52. Defendant Smith's narrative states that festival personnel told Fuller to leave the venue and that Plaintiffs were not part of the Cherry Blossom Festival.

Plaintiffs were on public sidewalks, had not entered private property after notice, and had not been lawfully excluded from a traditional public forum.

53. Defendants, including but not necessarily limited to Smith and Jones, then arrested Christopher Smith for disorderly conduct. Defendants arrested Fuller for criminal trespass and disorderly conduct.

54. Neither Plaintiff engaged in any criminal activity and there was no arguable probable cause for arrest, including but not limited to probable cause based on fighting, threatening behavior, violent or tumultuous conduct, or unlawful entry.

55. Plaintiffs further allege that the arrests were driven by complaints about the content and viewpoint of their religious and abortion-related speech and by pressure from festival personnel and a nearby business owner, rather than by objectively unlawful conduct.

56. During the arrests, Defendant Smith applied handcuffs to both Plaintiffs excessively tightly. Plaintiff Smith alleges that the cuffs were placed tightly on his forearm near the superficial radial nerve, causing intense pain, broken skin, and bruising. Plaintiff Fuller repeatedly asked for the cuffs to be loosened and later observed bruising to his wrists.

57. Plaintiffs were jailed, released, and prosecuted for approximately eleven months. They were required to attend court proceedings, lost work time and income, suffered substantial emotional distress, and experienced an ongoing chilling effect on their willingness to engage in protected public preaching.

58. On or about February 16, 2026, after the State presented its case at trial, the court granted a directed verdict in Plaintiffs' favor. The March 29, 2025 prosecutions therefore terminated in Plaintiffs' favor.

59. Plaintiff Smith suffered another seizure in court during the February 2026 trial. Both Plaintiffs suffer continuing anxiety, reputational harm, and fear of repeated arrest when exercising their First Amendment rights in Macon-Bibb County.

60. Plaintiff Fuller further alleges that Defendant Smith later reposted Fuller's mugshot on a personal social-media account with mocking commentary, which Plaintiffs contend is additional evidence of retaliatory or malicious motive.

**F. Pattern, Supervisory Participation, and Policy or Custom**

61. Up to and including March 2025, if not longer, multiple Bibb County officers of different ranks repeatedly applied the same unlawful policy, practice, procedure, and premise: that Plaintiffs could not use an amplifier for

noncommercial religious preaching on a public sidewalk unless they stopped, obtained permission, or faced arrest, despite the text of § 15-26(c).

62. The conduct involved line officers and supervisors, including a Captain, Lieutenants, Sergeants, a Corporal, and multiple deputies. The challenged interpretation continued after a formal Internal Affairs complaint specifically placed the Sheriff's Office on notice of the ordinance text and the First Amendment issue.

63. Rather than correcting the interpretation, training officers on the noncommercial public address exception, or instructing officers not to use unrelated criminal statutes to suppress protected speech, supervisory personnel rejected Smith's complaint and later officers continued the same practice.

64. The sequence of repeated enforcement, supervisory participation, failure by Defendants to correct the practice after notice, and favorable terminations of the charges, is evidence of a written or unwritten policy, custom, practice, ratification, or deliberately indifferent failure to train and supervise concerning amplified public speech and religious street preaching, and of retaliation and speech suppression based on content.

65. Plaintiffs intend to continue engaging in noncommercial religious preaching in downtown Macon and to use reasonable amplification at lawful times.

Because the same conduct has repeatedly resulted in threats, a citation, arrests, prosecutions, and physical restraint, Plaintiffs face a credible and ongoing threat of future enforcement necessitating declaratory and injunctive relief.

## COUNT I

## FIRST AMENDMENT - RETALIATION, VIEWPOINT DISCRIMINATION, PRIOR RESTRAINT, AND INTERFERENCE WITH PROTECTED RELIGIOUS SPEECH

66. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

67. Plaintiffs' peaceful religious preaching, public advocacy, use of reasonable amplification for a noncommercial public address, objections to unlawful police restrictions, and petitioning activity through complaints to government are protected by the First Amendment.

68. The individual Defendants, acting under color of state law, subjected Plaintiffs to threats of arrest, citation, arrest, prosecution, seizure of equipment, and other adverse governmental actions that would deter a person of ordinary firmness from continuing the protected activity.

69. The repeated enforcement actions by Defendants were substantially motivated by Plaintiffs' protected speech, their religious viewpoint, complaints from listeners who objected to their message, and, as to later incidents, Plaintiffs' prior assertion of constitutional rights and petitioning activity.

70. Defendants were retaliating against Plaintiffs for their complaints regarding past violations of their constitutional rights by the Bibb County Sheriff's Department and its officers.

71. Defendants imposed a heckler's veto by using listener complaints and objections to the content of Plaintiffs' religious and abortion-related message as a basis to suppress otherwise lawful speech in a traditional public forum.

72. Plaintiffs further allege that Defendants imposed an unlawful prior restraint by threatening arrest or prosecution unless Plaintiffs stopped using amplification that the local ordinance expressly permitted when reasonably used for a noncommercial public address.

73. The arrests and criminal citations of Plaintiffs lacked probable cause.

74. The repeated, preexisting policy and pattern of using law enforcement to suppress Plaintiffs' protected speech create liability for supervisory personnel and the government agencies in question.

75. Defendants' conduct caused loss of liberty, chilled speech, emotional distress, reputational harm, economic loss, medical expenses, and other general and special damages.

76. The individual Defendants are liable for compensatory damages and, to the extent permitted by law, punitive damages. Plaintiffs are also entitled to

declaratory and prospective injunctive relief and reasonable attorney's fees under 42 U.S.C. § 1988.

**COUNT II**

**FOURTH AMENDMENT - FALSE ARREST AND UNLAWFUL SEIZURE**

77. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

78. An arrest without probable cause constitutes an unreasonable seizure under the Fourth Amendment.

79. On September 28, 2024, Defendants Penson, Gray, Jackson, Holmes, Callaway, and others seized and arrested Plaintiff Smith even though Plaintiff Smith was engaged in protected speech and was in no way breaking any law or ordinance.

80. On December 14, 2024, Defendant Smith charged Plaintiff Fuller with a crime by citation, even though he was engaged in protected speech and was in no way breaking any law or ordinance.

81. On March 29, 2025, Defendants Clayton Smith and Jones seized and arrested both Plaintiffs even though Fuller had complied with the request to reduce the volume, the solicitor had advised that compliance and absence of a disturbance meant the conduct was permissible, and Plaintiffs were on public sidewalks

engaged in peaceful speech. Plaintiffs were engaged in protected speech and were in no way breaking any law or ordinance.

82. Under the facts alleged, no objectively reasonable officer could have believed there was probable cause or arguable probable cause to arrest Plaintiffs for their conduct.

83. The unconstitutional seizures caused Plaintiffs loss of liberty, jail confinement, emotional distress, reputational injury, lost wages, medical expenses, and other damages.

**COUNT III**

**FOURTH AMENDMENT - MALICIOUS PROSECUTION**

84. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

85. Defendants caused or materially contributed to the institution and continuation of criminal proceedings against Plaintiff Smith arising from the September 28, 2024 arrest and against both Plaintiffs arising from the March 29, 2025 arrests by supplying accusations, reports, testimony, and purported factual bases for the charges and taking the March 29, 2025 charges to a jury trial.

86. The criminal charges were unsupported by probable cause.

87. The September 28, 2024 prosecution terminated in Smith's favor when it was dismissed on or about February 4, 2025.

88. The March 29, 2025 prosecutions terminated in Plaintiffs' favor when the trial court granted a directed verdict on February 16, 2026 after the State presented its evidence.

89. To the extent Plaintiff Fuller's December 14, 2024 citation and resulting prosecution imposed a qualifying seizure or restraint on liberty under the Fourth Amendment, Fuller pleads malicious prosecution concerning that matter as well, as it was also resolved in Plaintiff's favor.

90. As a direct and proximate result, Plaintiffs suffered loss of liberty, court-related burdens and costs, lost wages, emotional distress, reputational harm, economic loss, medical expenses, and other general and special damages.

**COUNT IV**

**FOURTH AMENDMENT - EXCESSIVE FORCE**

91. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

92. During the March 29, 2025 arrests, Defendant Clayton Smith applied handcuffs to Plaintiffs in a manner that was unnecessarily and excessively tight under the circumstances.

93. Plaintiff Smith alleges the cuff was placed tightly on his forearm near the superficial radial nerve, causing intense pain, broken skin, and bruising. Fuller

repeatedly asked that the cuffs be loosened because of pain and later observed bruising to his wrists.

94. Plaintiffs were nonviolent, were not attempting to flee, and posed no immediate threat. The force used was therefore objectively unreasonable and disproportionate to any legitimate law enforcement need.

95. Painful handcuffing that causes significant injury violates clearly established Fourth Amendment rights.

96. Defendant Clayton Smith's use of excessive force directly and proximately caused physical pain, injury, emotional distress, reputational harm, economic loss, medical expenses, and other general and special damages.

**COUNT V**

**42 U.S.C. § 1983 - MUNICIPAL LIABILITY AGAINST MACON-BIBB COUNTY AND SHERIFF DAVID DAVIS**

97. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

98. Under Monell v. Department of Social Services, 436 U.S. 658, 690-94 (1978), a local government may be liable under § 1983 when an official policy, widespread custom, final-policymaker decision, ratification, or deliberately indifferent failure to train or supervise is the moving force behind a constitutional violation.

99. Plaintiffs seek to hold Defendant Macon-Bibb County and Defendant Sheriff David Davis liable to the extent that the policies, customs, ordinance enforcement practices, training decisions, supervisory ratification, and public space policies are attributable to Defendant Macon-Bibb County and Defendant Sheriff David Davis as its final policymakers under Georgia law.

100. Defendant Macon-Bibb County and Defendant Sheriff David Davis enacted, enforced, and maintained § 15-26, including the express exception for reasonable amplification during noncommercial public addresses. Nevertheless, officers repeatedly enforced a contrary rule or unwritten policy under which Plaintiffs' religious amplification was treated as categorically prohibited or permit dependent.

101. The repeated incidents involved multiple officers and supervisors over many months. The pattern and practice continued after Plaintiff Smith submitted a detailed written complaint specifically identifying the ordinance language and the constitutional issue and violations.

102. Defendants' supervisory review concluded that the challenged conduct complied with policy and marked the complaint "Not Sustained." This ratified a policy or practice of threatening, citing, or arresting persons engaged in protected First Amendment activity despite their compliance with governing law.

Defendants' pattern and practice, rising to the level of a policy, caused officers to repeat the same interpretation and to escalate from threats to citation and arrest, thereby violating Plaintiffs' constitutional rights.

103. Defendants' actions constitute evidence of an entrenched custom or practice, ratification, and deliberate indifference to the constitutional rights of citizens, including Plaintiffs, and resulted in the constitutional violations alleged herein. This is in addition to the obvious need to train and supervise officers concerning the First Amendment and the actual text of the local noise ordinance, which Defendants failed to do.

104. The policy or custom encouraged officers to respond to listener complaints about religious speech by suppressing the speaker rather than enforcing content-neutral laws and protecting constitutional rights, thereby producing the viewpoint discrimination, retaliation, unlawful seizures, and prosecutions alleged above.

105. The policy, custom, practice, ratification, and/or failure to train or supervise were moving forces behind Plaintiffs' injuries.

106. Plaintiffs seek compensatory damages and equitable relief against Defendant Macon-Bibb County and Defendant Davis, but do not seek punitive damages against the County.

## COUNT VI

## DECLARATORY AND INJUNCTIVE RELIEF

107. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

108. Plaintiffs intend to continue preaching and engaging in noncommercial religious public addresses on public sidewalks and streets in Macon-Bibb County and elsewhere, including through reasonable use of amplification during lawful hours.

109. Because Defendants and their agencies repeatedly threatened, cited, arrested, and prosecuted Plaintiffs for substantially the same protected activity, Plaintiffs face a credible threat of future enforcement and continuing chill to their First Amendment rights.

110. Plaintiffs seek a declaration that Defendants' past enforcement actions, violated Plaintiffs' constitutional rights and that Defendants may not in the future enforce Macon-Bibb County Code § 15-26 or other criminal laws to prohibit the reasonable use of amplification for noncommercial public addresses merely because the message is religious, controversial, unwelcome to listeners, or opposed by nearby businesses or event organizers.

111. Plaintiffs further seek prospective injunctive relief prohibiting Defendants and those acting in concert with them from threatening, citing,

arresting, or prosecuting Plaintiffs for protected amplified public speech absent constitutionally sufficient and objectively reasonable grounds under valid law.

112. Plaintiffs also seek appropriate prospective relief requiring constitutionally adequate training, supervision, and guidance concerning § 15-26(c), public-forum speech, viewpoint neutrality, retaliatory enforcement, and the prohibition on using a heckler's veto to suppress protected speech.

## DAMAGES

113. As a direct and proximate result of Defendants' conduct, Plaintiff Smith has suffered constitutional rights violations, loss of liberty, physical pain and injury, medical seizures associated with the stress of arrest and prosecution, medical expenses including an emergency-room bill of approximately $1,870 from the September 2024 incident, lost wages, emotional distress, humiliation, reputational injury, loss of sleep, anxiety concerning his security clearance and employment, and a continuing chilling effect on his religious speech.

114. As a direct and proximate result of Defendants' conduct, Plaintiff Fuller has suffered constitutional rights violations, loss of liberty, physical pain and bruising from handcuffs, lost wages from court appearances, emotional distress, humiliation, reputational injury, family-related distress associated with the risk of incarceration, and a continuing chilling effect on his religious speech.

115. Plaintiffs are entitled to nominal damages for completed constitutional violations even to the extent a particular category of compensatory damages cannot be proven with precision.

116. Because the individual Defendants' conduct, as alleged, was intentional, malicious, retaliatory, or in reckless disregard of clearly established constitutional rights, Plaintiffs seek punitive damages against the individual Defendants to the extent permitted by federal law.

117. Plaintiffs seek reasonable attorney's fees and litigation expenses under 42 U.S.C. § 1988.

## JURY DEMAND

118. Plaintiffs demand trial by jury on all issues so triable.

## PRAYER FOR RELIEF

(a) That summons issue and Defendants be required to answer this Complaint as provided by law;

(b) That the Court enter judgment declaring that the conduct alleged herein violated Plaintiffs' rights under the First and Fourth Amendments to the United States Constitution;

(c) That the Court enter appropriate preliminary and permanent injunctive relief protecting Plaintiffs from future unconstitutional enforcement against reasonable, noncommercial amplified religious public addresses;

(d) That Plaintiffs recover compensatory and nominal damages against the liable Defendants in an amount determined by the jury;

(e) That Plaintiffs recover punitive damages against the individual Defendants to the extent allowed by law;

(f) That Plaintiffs recover reasonable attorney's fees and litigation expenses under 42 U.S.C. § 1988;

(g) That Plaintiffs recover pre-judgment and post-judgment interest as allowed by law; and

(h) That the Court award such other and further relief as it deems just and proper.

Respectfully submitted this 10th day of September, 2026.

/s/ Jordan Johnson
Jordan Johnson
Georgia State Bar No. 673643
Attorney for Plaintiff

5 Dunwoody Park

Suite 100
Atlanta, GA 30338
404.477.4755
404.592.9089 (Fax)
Alex@Justice.Law