**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER CLAYTON SMITH AND MATTHEW BLAKE FULLER,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**MACON-BIBB COUNTY, SHERIFF DAVID DAVIS IN HIS INDIVIDUAL AND OFFICIAL CAPACITY, AND CLAYTON SMITH, CEDRIC PENSON, FREDERICK GRAY, TIMORTHY JONES, SCOTT DAVIS, JOSEPH M. CALLAWAY, JEREMY HOLMES, AND QUENTIN JACKSON EACH IN THEIR INDIVIDUAL CAPACITIES,**<br><br>**Defendants.** | : | **Case No. 5:26-cv-00397-MTT** |

## DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT

**COME NOW**, Defendants, by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), hereby file this Motion to Dismiss and Memorandum of Law in Support thereof, showing this Court that Plaintiffs' Complaint should be dismissed in its entirety. In support of this Motion, Defendants show the following:

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Plaintiffs Christopher Clayton Smith ("Smith") and Matthew Blake Fuller ("Fuller") are street preachers who brought an amplified speaker or megaphone to the Cherry Blossom Festival in downtown Macon, repeatedly turned the volume back up after officers asked them to lower it, and drew noise complaints from nearby businesses and festival-goers before they were arrested. They now sue Macon-Bibb County (the "County"), Sheriff David Davis ("Sheriff Davis"), and the arresting deputies (the "Officers") under 42 U.S.C. § 1983 for the following causes of action:

- Count I: First Amendment Retaliation
- Count II: Fourth Amendment False Arrest and Unlawful Seizure
- Count III: Malicious Prosecution
- Count IV: Excessive Force
- Count V: Monell Liability Against Macon-Bibb County and Sheriff Davis
- Count VI: Declaratory and Injunctive Relief

Plaintiffs' Complaint fails to state a claim as to any of these alleged causes of action, and it should be dismissed in its entirety. As shown herein, the arrests were founded on a reasonable basis, and a reasonable officer could have believed the charged offenses of disorderly conduct and criminal trespass were being committed. That arguable probable cause entitles the Officers to qualified immunity and independently defeats the Fourth Amendment and First Amendment arrest claims alike. The later favorable terminations of the charges do not change the facts known by the Officers at the scene.

The remaining claims fail for independent reasons. The malicious-prosecution claim rests on warrantless, on-scene arrests that are not seizures pursuant to legal process, and no defendant took any affirmative act to advance a prosecution. The excessive-force claim alleges only tight handcuffing with minor bruising, which settled law does not treat as excessive force. The claims against the County and Sheriff Davis fail because a Georgia sheriff acts as an arm of the State, and the County bears no municipal liability. Furthermore, Plaintiffs lack standing to pursue prospective relief, and the supervisory defendants are not alleged to have personally participated in any of the acts Plaintiffs complain of. For these reasons, explained more fully herein, the Defendants request that this action be dismissed.

**BACKGROUND**

In their Complaint, Plaintiffs Christopher Clayton Smith ("Smith") and Matthew Blake Fuller ("Fuller") state that they are Christian ministers who engage in street preaching and religious public-address activity in Macon-Bibb County. (Doc. 1, ¶¶ 10-11). Plaintiffs' Complaint recounts three separate encounters with Bibb County Sheriff's Deputies that form the basis of this action.

The first encounter occurred on September 28, 2024 and involved only Smith. (Doc. 1, ¶ 31–37). Smith contends that he was preaching at an unspecified location in Macon-Bibb County using a loudspeaker system, and that he refused to stop using the loudspeaker when asked by a group of Sheriff's Deputies. *Id.* Smith was arrested and prosecuted, but the charges were ultimately dismissed. (Doc. 1 ¶ 36).

The second incident allegedly occurred on December 14, 2024, and only involved Fuller. (Doc. 1, ¶¶ 38-44). In this incident, Fuller received a citation for a noise violation after using a loudspeaker system. (Doc. 1 ¶ 38). That citation was later dismissed. *Id.*

The third and central encounter occurred on March 29, 2025, at the Cherry Blossom Festival. Lieutenant Clayton Smith was notified by festival staff that a man, later identified as Fuller, was loudly speaking through a loud speaker at the corner of Third and Cherry Streets. (Bibb County Sheriff's Case Report at 13).[1] Deputies were notified by dispatch that it had received several calls about the disturbance, and the owner of a nearby business, Scott Mitchell, reported that the Plaintiffs were disturbing the peace of his business. (Bibb County Sheriff's Case Report at 13). An independent witness described the corner as "packed with people" and the Plaintiffs "speaking loudly on a megaphone," and stated that the volume increased each time the officer

[1] The Case Report is attached hereto as Exhibit A. The Case Report is referenced and relied on in Plaintiffs' Complaint.

walked away. (Beall Witness Statement). When the speaker was seized, its volume knob "had been turned up to max volume." (Bibb County Sheriff's Case Report at 13).

Cherry Blossom staff asked Fuller to leave the festival venue because he was not affiliated with the festival, and he refused. (Bibb County Sheriff's Case Report at 13; Officer Arrest Narrative at 22). Before acting, the officer received several complaints of disturbing the peace from attendees, the business owner, and festival staff, and consulted a State Court solicitor. (Bibb County Sheriff's Case Report at 13, 22).

Both Plaintiffs were arrested at the scene on. (Doc. 1 ¶ 81). They were charged with disorderly conduct under O.C.G.A. § 16-11-39 and criminal trespass under O.C.G.A. § 16-7-21. (Bibb County Sheriff's Case Report at 11). The incident records reflect that both arrests were warrantless. (Bibb County Sheriff's Case Report at 3). The Complaint alleges that Lieutenant Clayton Smith applied the handcuffs in an unnecessarily and excessively tight manner, causing Smith pain, broken skin, and bruising, and that Fuller asked for the cuffs to be loosened and later observed bruising to his wrists. (Doc. 1 ¶¶ 56, 91).

The criminal proceedings ended in Plaintiffs' favor. (Doc. 1 ¶ 58). The September 2024 charges were dismissed, and on February 16, 2026, the trial court granted a directed verdict terminating the March 2025 prosecutions. (Doc. 1 ¶¶ 87-88). The Complaint alleges that Plaintiffs nonetheless face a credible threat of future enforcement and a continuing chill on their expression. (Doc. 1 ¶ 109)

## **LEGAL STANDARD**

A complaint survives a motion to dismiss under Rule 12(b)(6) only if its well-pleaded factual allegations state a claim to relief that is plausible on its face; "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" do not suffice. *Ashcroft v. Iqbal*, 556

U.S. 662, 677–678 (2009). In testing plausibility, the Court accepts the Complaint's well-pleaded factual allegations as true and draws all reasonable inferences in Plaintiffs' favor, while disregarding mere conclusory assertions. *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018). The complaint must contain enough factual matter to render each element of a claim plausible, not merely conceivable. *Ashcroft v. Iqbal*, 556 U.S. at 677–678.

That take-as-true standard does not shield these claims, because qualified immunity is an immunity from suit that the Eleventh Circuit resolves on a Rule 12(b)(6) motion whenever the defense turns on the legal significance of the facts the plaintiff alleges. *Gates*, 884 F.3d at 1296. Where the dispositive facts appear on the face of the complaint, the Court decides the immunity question at the pleading stage rather than deferring it to discovery. *Id.*

## ARGUMENT

### I. The Individual Officers Are Entitled to Qualified Immunity on the Arrest-Based Claims Because They Had at Least Arguable Probable Cause to Arrest (Counts I and II).

Plaintiffs' false arrest and retaliation claims rise or fall on a single question, one which the Complaint answers against Plaintiffs: whether a reasonable officer could have believed there was probable cause to arrest the Plaintiffs. The arrests followed 1) repeated noise complaints from festival staff, a business owner, and attendees, 2) Fuller's refusal to leave the festival grounds after being told to go, and 3) use of a speaker at maximum volume to "shout loudly at the passersby." (Bibb County Sheriff's Case Report, p. 21). A reasonable officer confronted with those facts could have believed that the charged offenses of disorderly conduct and criminal trespass were being committed. That showing of arguable probable cause confers qualified immunity, and it does so for both the Fourth Amendment false-arrest claim and the First Amendment retaliatory-arrest claim stemming from the same arrests. That result is reinforced at every turn.

**A. A Reasonable Officer Could Have Believed There Was Probable Cause to Arrest for Disorderly Conduct and Criminal Trespass.**

The Officers are entitled to qualified immunity because, on the facts which the Complaint and the incident records themselves supply, a reasonable officer could have believed there was probable cause to arrest Plaintiffs for disorderly conduct under O.C.G.A. § 16-11-39 and Fuller for criminal trespass under O.C.G.A. § 16-7-21. The governing standard is not actual probable cause but "arguable" probable cause, and the Eleventh Circuit has made its consequence plain: an officer "is entitled to qualified immunity if he had only 'arguable' probable cause to arrest the plaintiff," and "when an officer has arguable probable cause to arrest, he is entitled to qualified immunity both from Fourth Amendment claims for false arrest and from First Amendment claims stemming from the arrest." *Gates v. Khokhar*, 884 F.3d 1290 at 1298 (11th Cir. 2018). Arguable probable cause exists wherever "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed" to make the arrest. *Redd v. City of Enter*, 140 F.3d 1378, 1382–1383 (11th Cir. 1998). That inquiry "depends on the elements of the alleged crime and the operative fact pattern," and it forgives the officer who may "reasonably but mistakenly conclude that probable cause is present." *Gates*, 884 F.3d at 1298.

The bar the Officers must clear is a modest one. Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *D.C. v. Wesby*, 583 U.S. 48, 56–57 (2018). Arguable probable cause demands even less, because it "does not … require proving every element of a crime," since requiring as much "would negate the concept of probable cause and transform arresting officers into prosecutors." *Gates*, 884 F.3d at 1300. This defense is properly resolved now, on a Rule 12(b)(6) motion, accepting the Complaint's well-pleaded facts as true and drawing reasonable inferences for Plaintiffs, because it turns on the legal significance of the facts Plaintiffs themselves allege. *Id.* at 1296.

*Redd v. City of Enterprise* is the controlling analog and resolves this case. 140 F.3d at 1382–1383. There, a minister preached loudly on a public sidewalk, passersby complained of the loudness, and officers arrested him for disorderly conduct; the Eleventh Circuit held that the officers had arguable probable cause because they could reasonably have believed his loud speech violated the disorderly-conduct statute. *Id.* The court further held that this same arguable probable cause entitled the officers to qualified immunity on the minister's First Amendment claims, explaining that "when an officer has arguable probable cause to believe that a person is committing a particular public offense, he is entitled to qualified immunity from suit, even if the offender may be speaking at the time that he is arrested." *Id.* at 1383–1384. The parallel to this case is nearly exact: amplified sidewalk preaching, repeated complaints about the noise, and an arrest for disorderly conduct. *Id.* As in *Redd*, the Plaintiffs' Complaint should be dismissed because the Officers are entitled to qualified immunity.

1. <u>Probable cause existed to arrest the Plaintiffs for Disorderly Conduct under O.C.G.A. § 16-11-39.</u>

The Complaint and the incident records establish precisely the *Redd* fact pattern. Lieutenant Smith was notified by festival staff that a man was preaching through a loud speaker at the crowded downtown corner of Third and Cherry Streets during the Cherry Blossom Festival. (Bibb County Sheriff's Case Report at 13). Dispatch relayed that it had received several calls about the disturbance, and the owner of a nearby business reported that the preachers were disturbing the peace of his business. (Bibb County Sheriff's Case Report at 13). An independent witness described the corner as "packed with people" and the Plaintiffs "shouting loudly at the passersby" using a loudspeaker or megaphone, and that the volume increased each time the officer walked away. (Bibb County Sheriff's Case Report, p. 21, Beall Witness Statement). When the Officers seized the speaker, its volume knob "had been turned up to max volume." (Bibb County Sheriff's

Case Report, p. 13). A reasonable officer facing loud amplified shouting at passersby at a festival and repeated complaints of shop owners and festival attendees could have believed the conduct violated the disorderly-conduct statute, which is all arguable probable cause requires. *Redd*, 140 F.3d at 1382–1383.

That Plaintiffs may dispute whether their amplified speech satisfied every element of Section 16-11-39, but even so, this does not change the analysis because arguable probable cause does not turn on proof of every element of the offense. *Gates* 884 F.3d at 1300. A reasonable officer could read Plaintiffs' repeated refusals to keep the volume down, after being asked, as supplying the intent the offense requires. *Id.* at 1301.

2. <u>Probable cause existed to support the arrest for Criminal Trespass under O.C.G.A. § 16-7-21.</u>

The Officers independently had at least arguable probable cause to arrest Fuller for criminal trespass. Under O.C.G.A. § 16-7-21(b), a person commits criminal trespass when he "knowingly and without authority" remains on the premises of another "after receiving notice from the owner … to depart." *Parks v. State*, 304 Ga. App. 175, 178 (2010). Georgia courts hold that a refusal to leave after such a directive is itself enough: where a person is told to leave and refuses, "[t]his alone was sufficient evidence of criminal trespass." *Reid v. State*, 224 Ga. App. 524, 524–525 (1997). Probable cause to arrest for trespass exists even where the officer did not personally give the warning, so long as the owner or an authorized representative did. *United Baptist Church v. Holmes*, 232 Ga. App. 253, 256–257 (1998).

Courts have found arguable probable cause on facts materially like these. The Eleventh Circuit affirmed arguable probable cause for a trespass arrest where the officer reasonably relied on information that the arrestee had remained on the property after notice. *Taylor-Williams v. Rembert*, 712 F. App'x 960, 962 (11th Cir. 2017). Likewise, another federal court in Georgia

granted a motion to dismiss on this ground where the objective facts showed the plaintiff had "remained inside the bar after receiving notice from the owner to depart." *Brown v. Gonzalez*, No. 2:24-CV-125, 2025 WL 1787152 (S.D. Ga. June 27, 2025).

The incident records here reflect the same pattern. Fuller crossed into the festival venue, Cherry Blossom staff asked him to leave because he was not affiliated with the festival, and he refused. (Bibb County Sheriff's Case Report at 13; Officer Arrest Narrative at 22). On those facts, a reasonable officer could have believed Fuller was remaining after notice to depart, which supplied at least arguable probable cause for the trespass charge. *Bridges v. City of Americus*, 2014 WL 1315339 (M.D. Ga. 2014). Because arguable probable cause existed for at least one offense as to each Plaintiff, the Officers are entitled to qualified immunity on Counts I and II, and the Eleventh Circuit has directed dismissal on precisely this posture. *Gates v. Khokhar*, 884 F.3d at 1298, 1305.

### B. The Favorable Terminations of the Criminal Prosecutions Do Not Negate Probable Cause Measured at the Time of Arrest.

The dismissal of the Plaintiffs' earlier charges and the February 2026 directed verdict do not help Plaintiffs, because probable cause is measured by the facts known at the time of arrest and its existence is an absolute bar to a false-arrest claim. Plaintiffs lean on those favorable dispositions as proof that the arrests were unlawful. (Doc. 1 ¶ 58). The settled law is to the contrary: "[t]he existence of probable cause is an absolute bar to a § 1983 claim of false arrest," and probable cause "can survive an acquittal." *Davis v. City of Apopka*, 78 F.4th 1326, 1333–1334 (11th Cir. 2023). As succinctly stated in *Gates*, "innocent behavior frequently will provide the basis for a showing of probable cause." The Court further reasoned "'[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released.'" 884 F.3d at 1298.

The reason is that the validity of an arrest is judged on what the officer knew when he made the arrest, not with the hindsight of a later acquittal. The Eleventh Circuit has long held that when "a defendant is subsequently acquitted or charges are dropped against the defendant is of no consequence in determining the validity of the arrest itself." *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990). Furthermore, "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Id.* at 1507. An analysis of probable cause means the Court does not analyze certainties but rather "as the very name implies, we deal with probabilities." *Id.* And as the Eleventh Circuit recently stated, "[w]e have ourselves held that probable cause does not require anything close to conclusive proof or proof beyond a reasonable doubt that a crime was in fact committed, *or even a finding made by a preponderance of the evidence*.'" *Davis v. City of Apopka*, 78 F.4th 1326 at 1333–1334 (2023) (emphasis original).

Those principles control here. Probable cause is assessed on the facts known to the Officers at the moment of each warrantless on-scene arrest, and since arguable probable cause existed when the arrests were made, the favorable terminations cannot revive the Fourth Amendment claim.

**C. Probable Cause Independently Bars the First Amendment Retaliatory-Arrest Claim.**

The same probable cause that defeats the false-arrest claim independently defeats the First Amendment retaliation claim, because a plaintiff making that claim must plead and prove the absence of probable cause. The Supreme Court held in *Nieves v. Bartlett* that "[t]he plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest." 587 U.S. 391, 402 (2019). "Absent such a showing, a retaliatory arrest claim fails." *Id.* at 404–409.

The Eleventh Circuit has adopted that rule and applied it to arrests like these. A plaintiff must "plead and prove an absence of probable cause … in order to establish the causation link between the defendant's retaliatory animus and the plaintiff's injury." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019). The Eleventh Circuit's 2025 decision in *Prospero v. Sullivan* reaffirmed that, when the alleged retaliatory conduct is an arrest, "[t]he presence of probable cause should generally defeat a First Amendment retaliatory arrest claim." *Prospero v. Sullivan*, 153 F.4th 1171, 1183 (11th Cir. 2025) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 405 (2019)) Because the existence of probable cause at the time of arrest "is an absolute bar to a subsequent constitutional challenge to the arrest," the arguable probable cause for disorderly conduct or trespass forecloses the First Amendment count just as it forecloses the Fourth. *Gates v. Khokhar*, 884 F.3d at 1297–1298. (quoting *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010))

Courts in this circuit routinely apply that bar at the pleading stage. The Northern District of Georgia dismissed a Section 1983 retaliatory-arrest claim on the pleadings because the officer had probable cause. *Cooley v. Woods*, 642 F. Supp. 3d 1363, 1377 (N.D. Ga. 2022). In another case involving a criminal-trespass arrest after a refusal to leave, the Southern District of Georgia concluded that "the existence of probable cause bars a retaliatory arrest claim as a matter of law absent an exception." *Brown v. Gonzalez*, 2025 WL 1787152 (S.D. Ga. 2025). The Plaintiffs' own allegations of repeated disturbance complaints before the arrests, and of Fuller's refusal to leave the venue after being asked, establish arguable probable cause and defeat the retaliation claim. (Bibb County Sheriff's Case Report at 13, 22; *Nieves v. Bartlett*, 587 U.S. at 402.

### D. Even Past the Probable-Cause Bar, the First Amendment Claim Fails Because the Arrests Charged Content-Neutral Offenses, No Comparator Is Pleaded, and the Arrests Would Have Occurred Regardless of Any Animus.

Even if the Court were to look past the probable-cause bar, Count I would still fail on three further, independent grounds. The first is that the Court need not reach the Complaint's prior-restraint, viewpoint, and heckler's-veto theories at all, because arguable probable cause for the content-neutral offenses charged—disorderly conduct and trespass after notice—entitles the Officers to qualified immunity on the First Amendment claims that stem from the arrest. *Redd v. City of Enter.*, 140 F.3d at 1383–1384.

The second ground is that Plaintiffs have not made any allegation that other "comparators" were treated differently, so the narrow *Nieves* exception is unavailable. That exception applies only where "a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been," and because the inquiry is objective, "the statements and motivations of the particular arresting officer are 'irrelevant.'" *Nieves*, 587 U.S. at 406–408 (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). The Eleventh Circuit, restating that *Nieves* exception, has described it as requiring objective evidence that similarly situated individuals "committing the same conduct" were not arrested. *DeMartini*, 942 F.3d at 1297–1298. A federal court in Georgia applied that rule at the pleading stage and dismissed, holding that conclusory assertions of preferential treatment do not suffice. *Brown v. Gonzalez*, 2025 WL 1787152 (S.D. Ga. 2025). Here, the Complaint alleges that the arrests were driven by complaints about the content and viewpoint of Plaintiffs' message, as well as by pressure from festival personnel and a nearby business owner. (Doc. 1 ¶ 55). It does not plead the objective comparator evidence the exception requires—that a similarly situated

individual committing the same conduct, but not engaged in the same protected speech, went unarrested.

The third ground is that the same-decision defense of *Mt. Healthy* defeats the claim even if Plaintiffs cleared the probable-cause threshold. Once a plaintiff shows that protected conduct was a motivating factor, "the defendant can prevail only by showing that the [arrest] would have been initiated without respect to retaliation." *DeMartini v. Town of Gulf Stream*, 942 F.3d at 1296. A defendant carries that burden by showing it "would have reached the same decision … even in the absence of the protected conduct." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 286–287 (1977). The independent, content-neutral grounds for these arrests—the repeated disturbance complaints, the refusals to move, Fuller's refusal to leave the venue, and the speaker restored to maximum volume—show that the Officers would have made the same arrests regardless of any religious or abortion-related message. (Bibb County Sheriff's Case Report at 13). The charged offenses of disorderly conduct and criminal trespass are themselves content-neutral. (Bibb County Sheriff's Case Report at 11)

### E. No Clearly Established Law Placed the Unlawfulness of These Arrests Beyond Debate.

Independent of whether any constitutional violation occurred, the Officers are immune because no clearly established law condemned the arrest of loud, non-compliant amplified preachers after disturbance complaints and a refusal to leave. A court may resolve qualified immunity on the clearly-established prong alone, without first deciding whether a violation occurred. *Corbitt v. Vickers*, 929 F.3d 1304, 1323 (11th Cir. 2019). Officers are immune unless the unlawfulness of their conduct was "clearly established at the time," meaning "existing law must have placed the constitutionality of the officer's conduct 'beyond debate'"—a demanding standard that protects "all but the plainly incompetent or those who knowingly violate the law."

*D.C.*, 583 U.S. at 62–63. (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011), and *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The clearly-established inquiry must be undertaken with precision. Courts "must not 'define clearly established law at a high level of generality,'" and the required "degree of specificity" is "especially important in the Fourth Amendment context." *Id.* at 63–64. (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014), and *Mullenix v. Luna*, 577 U.S. 7, 11–12 (2015) (per curiam)). Absent a rare "obvious case," a plaintiff must "identify a case where an officer acting under similar circumstances … was held to have violated the Fourth Amendment." *Id.* (quoting *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam))

It is therefore not enough for Plaintiffs to invoke the general proposition that an arrest without probable cause violates the Constitution. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). As the Eleventh Circuit explained in *Gates v. Khokhar*, the question is not whether probable cause existed in fact but "whether the preexisting law was so clear that, given the specific facts facing a particular officer, one must say that 'every reasonable official would have understood that what he is doing violates'" the right at issue. *Gates v. Khokhar*, 884 F.3d at 1302–1303. (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Finding no such authority in a closely comparable case, the Eleventh Circuit reversed the denial of a Rule 12(b)(6) motion and ordered dismissal, because the plaintiff cited no "already existing law that clearly established—beyond debate—the unlawfulness of an arrest under the circumstances present here." *Id.* at 1303–1304.

The same is true here. Plaintiffs plead only the conclusory assertion that "no objectively reasonable officer could have believed there was probable cause or arguable probable cause to arrest Plaintiffs for their conduct," and they identify no controlling decision holding that an officer violates the Constitution by arresting amplified sidewalk preachers for disorderly conduct or

trespass after repeated disturbance complaints and refusals to comply. (Doc. 1 ¶ 82). The governing precedent runs the other way, because *Redd* granted immunity on closely analogous facts. *Redd v. City of Enter.*, 140 F.3d at 1382–1383. The record confirms the Officers' reasonableness, reflecting that the arresting officer consulted a State Court solicitor before acting. (Bibb County Sheriff's Case Report at 13). Because existing precedent did not place these arrests beyond debate, qualified immunity attaches as a matter of law, no discovery can alter that conclusion, and dismissal should be with prejudice. *D.C.*, 583 U.S. at 63–64.

**F. The December 14, 2024 Citation of Fuller Is Not a Fourth Amendment Seizure.**

To the extent Count II rests on the December 14, 2024 noise citation issued to Fuller (a separate incident from the primary incident that took place at the Cherry Blossom Festival), that episode cannot support a false-arrest claim, because a citation unaccompanied by a custodial arrest or meaningful restraint of liberty is not a Fourth Amendment "seizure." Applying *California v. Hodari D.*, the Eleventh Circuit has recognized that, under that decision, "a person is not seized within the meaning of the Fourth Amendment when in response to a show of authority, without physical force, the subject does not yield," and that, absent a seizure, "there was no violation of a Fourth Amendment right." *Wilson v. Northcutt*, 987 F.2d 719, 721–722 (11th Cir. 1993). Consistent with that principle, a federal court in Georgia determined, in the malicious-prosecution context, that an officer's decision to swear out warrantless-arrest affidavits was "not enough to meet the Fourth Amendment seizure requirement" there, and that a plaintiff released on bond who contested the charges had not experienced a seizure, because "normal conditions of pretrial release" are not a "continuing seizure" absent "some significant, ongoing deprivation of liberty." *Love v. Oliver*, 450 F. Supp. 2d 1336, 1342-43 (N.D. Ga. 2006) (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1235–36 (11th Cir. 2004)).

The Complaint pleads the December 14, 2024 episode as a citation of Fuller for a noise violation, not a custodial arrest or jailing. (Doc. 1 ¶ 41). Because that citation did not restrain Fuller's liberty in the manner the Fourth Amendment requires, it cannot support a false-arrest claim, and Count II should in any event be confined to the two custodial-arrest episodes, where the probable-cause defenses independently prevail. *Love*, 450 F. Supp. 2d at 1343.

## II. The Fourth Amendment Malicious-Prosecution Claim Fails (Count III).

The arrest-based defenses carry directly into Count III, which recasts the same arrests as a malicious prosecution and fails for three independent reasons. The threshold defect is that the only seizures the Complaint pleads were warrantless, on-scene arrests, not the seizure pursuant to legal process that a malicious-prosecution claim requires. Even if a qualifying seizure existed, probable cause supported the charges on which Plaintiffs were seized. And in all events, no defendant took the affirmative act of initiating or continuing a prosecution that the claim demands.

### A. The warrantless on-scene arrests were not seizures pursuant to legal process.

Count III fails at the threshold because a Section 1983 Fourth Amendment malicious-prosecution claim requires a seizure pursuant to legal process, and the only seizures pleaded here were warrantless arrests made at the scene. The Eleventh Circuit sharply distinguishes the two Fourth Amendment claims: a false-arrest claim concerns a seizure effected without legal process, such as a warrantless arrest, while a malicious-prosecution claim requires a seizure "pursuant to legal process," meaning a warrant-based seizure or one following an arraignment, indictment, or probable-cause hearing. *Williams v. Aguirre*, 965 F.3d 1147, 1157–1158 (11th Cir. 2020) (quoting *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016) (quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994))) To state the claim, a plaintiff must show "that the legal process justifying his

seizure was constitutionally infirm" and "that his seizure would not otherwise be justified without legal process." *Id.* at 1165.

A warrantless arrest, standing alone, cannot satisfy that requirement. The Eleventh Circuit reaffirmed that principle recently, explaining that "malicious-prosecution seizures were made under legal process but false-arrest or imprisonment seizures were made without legal process." *Gervin v. Florence*, 139 F.4th 1236, 1253 (11th Cir. 2025). Applying that distinction, the Northern District granted a Rule 12(b)(6) motion because the plaintiff alleged no arrest pursuant to legal process and no additional seizure, holding that a "warrantless arrest 'cannot serve as the predicate Fourth Amendment seizure for purposes of [a Section 1983] malicious prosecution claim.'" *Durrence v. Jackson Cnty., Georgia*, No. 2:25-CV-00386-SCJ, 2026 WL 2892356 (N.D. Ga. Aug. 17, 2026) (quoting *Donley v. City of Morrow*, 601 F. App'x 805, 814 (11th Cir. 2015)). The same analysis defeated a malicious-prosecution claim where the plaintiff was arrested without a warrant on misdemeanor charges later dismissed and identified no seizure following the commencement of judicial proceedings. *Tolston v. City of Atlanta, Georgia*, 723 F. Supp. 3d 1263, 1315–1316 (N.D. Ga. 2024).

The Complaint pleads only warrantless on-scene arrests. Both Plaintiffs were arrested at the scene on March 29, 2025, and the incident records confirm the arrests were warrantless. (Doc. 1 ¶ 81; Bibb County Sheriff's Case Report at 3). The malicious-prosecution count rests on those same arrests and the ensuing prosecutions, and it alleges no post-process seizure—no arrest warrant, and no detention following an arraignment, indictment, or probable-cause hearing attributable to these Officers. (Doc. 1 ¶ 85). Count III therefore fails because the only pled seizures are the warrantless arrests already addressed by the false-arrest analysis. *Williams v. Aguirre*, 965 F.3d at 1157–1158.

**B. Probable Cause Supported the Charges on Which Plaintiffs Were Seized**

Even if the Court finds a qualifying seizure, the malicious-prosecution claim still fails because probable cause supported the charges on which Plaintiffs were seized. The presence of probable cause, or at least arguable probable cause, defeats a Section 1983 malicious-prosecution claim, and a federal court in Georgia recently resolved such a claim on that basis, holding that it "fails because there was probable cause—or at least arguable probable cause—to support his arrest and prosecution." *Broes v. Boyce*, 629 F. Supp. 3d 1324, 1335 (N.D. Ga. 2022). Another dismissed both the false-arrest and malicious-prosecution counts because the officers had probable cause to arrest for the charged offenses. *Schilling v. Doherty*, 764 F. Supp. 3d 1293, 1301 (N.D. Ga. 2024). As shown above, at least arguable probable cause supported the disorderly-conduct and criminal-trespass charges arising from the repeated disturbance complaints and the refusals to move and to leave the venue. (Officer Arrest Narrative at 22).

The charge-specific rule in any event governs seizures pursuant to legal process, not warrantless arrests; for a warrantless arrest the any-crime rule applies, so probable cause for a single offense suffices. *Williams v. Aguirre*, 965 F.3d at 1162. The charges here were disorderly conduct and criminal trespass. (Bibb County Sheriff's Case Report at 11). As shown above, at least one charge as to each Plaintiff was supported by at least arguable probable cause, so Count III fails on the merits. *Broes*, 629 F. Supp. 3d at 1335.

**C. No Defendant Took an Affirmative Act to Advance the Prosecution.**

Count III additionally fails as to most defendants for the further reason that a malicious-prosecution defendant is liable only if he took an affirmative act to continue the prosecution, and the Sheriff, the County, and the Officers who merely assisted at the scene took no such act. To establish the claim, a plaintiff must prove "that the officer took an affirmative act to continue the

prosecution," because an officer has no duty to pursue the matter after an arrest. *Washington v. Howard*, 25 F.4th 891, 912 (11th Cir. 2022). Mere knowledge, acquiescence, or an arrest that does not affirmatively advance the legal process is insufficient. *Id.* at 906.

The Eleventh Circuit and district courts apply that requirement to dismiss officers who did no more than arrest or assist. An officer who "simply made an arrest" is not a proper malicious-prosecution defendant, because he was not the legal cause of the prosecution and is thus entitled to dismissal. *Payne v. DeKalb Cnty.*, 414 F. Supp. 2d 1158, 1177 (N.D. Ga. 2004). So too an officer whose participation was limited to assisting at the scene, which "did not amount to the 'instigation'" the claim requires. *Proescher v. Bell*, 966 F. Supp. 2d 1350, 1368 (N.D. Ga. 2013). And claims against officers "merely alleged to have arrested" a plaintiff fail at the pleading stage where the complaint does not allege they were the legal cause of the proceeding. *Killmon v. City of Miami*, No. 04-20707-CIV, 2006 WL 8433272 (S.D. Fla. Feb. 1, 2006). Accordingly, because the Officers simply made an arrest, Plaintiffs' malicious prosecution claims must fail.

## III. The Fourth Amendment Excessive-Force Claim Fails Because Tight Handcuffing Producing Minor Injury Is Not Excessive Force, and No Clearly Established Law Holds Otherwise (Count IV).

The excessive-force count fares no better than the arrest claims, because the Complaint alleges only tight handcuffing producing minor injuries, which under settled Eleventh Circuit law is not excessive force. Excessive-force claims are judged under the Fourth Amendment's objective-reasonableness standard, which recognizes that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," assessed "from the perspective of a reasonable officer on the scene." *Graham v. Connor*, 490 U.S. 386, 396–397 (1989). That reasonableness inquiry focuses on the

facts and circumstances of each case, including the severity of the offense, whether the suspect poses an immediate threat, and whether he resists or attempts to flee. *Id.*

Building on that standard, the Eleventh Circuit has drawn a clear line for minor force. "[T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Nolin v. Isbell*, 207 F.3d 1253, 1257–1258 (11th Cir. 2000). Applied to handcuffing specifically, the rule is settled: "Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal." *Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002).

The court has applied that rule to grant qualified immunity on facts stronger for the plaintiff than those pleaded here. In *Gold v. City of Miami*, an arrestee complained that the handcuffs were applied too tightly and left on for roughly twenty minutes, causing pain and skin abrasions. The court reasoned that the "minor nature of this injury reflects that minimal force was used" and granted qualified immunity. 121 F.3d 1442, 1446 (11th Cir. 1997). The Eleventh Circuit has gone further and affirmed qualified immunity at the Motion to Dismiss stage on a tight-handcuffing claim even where the officer allegedly ignored the arrestee's complaints about the tightness, because that conduct did not violate clearly established law. *Trotter v. Shull*, 720 F. App'x 542, 544 (11th Cir. 2017).

The allegations here fall squarely within that line of cases. The Complaint pleads only that Lieutenant Clayton Smith applied the handcuffs in an unnecessarily and excessively tight manner. (Doc. 1 ¶ 91). It alleges that the cuffs caused Plaintiff Smith pain, broken skin, and bruising, and that Fuller asked for the cuffs to be loosened and later observed bruising to his wrists. (Doc. 1 ¶ 56). Those are the minor, transient injuries that *Gold* and *Nolin* treat as de minimis. *Gold*, 121 F.3d at 1446; *Nolin*, 207 F.3d at 1257–1258.

The Complaint pleads no serious, permanent, or medically documented injury of the kind that would take a handcuffing claim out of the de minimis category; bruising and broken skin, without ongoing treatment or lasting harm, are not that injury. (Doc. 1 ¶ 56). On these allegations, no clearly established law placed the unlawfulness of the handcuffing "beyond debate," and qualified immunity attaches, requiring dismissal of Count IV. *Trotter*, 720 F. App'x at 544.

## IV. The Claims Against Macon-Bibb County and Sheriff Davis Fail (Count V).

The entity claims in Count V fail on a structural ground and, independently, on the merits. A Georgia sheriff acts as an arm of the State in his law-enforcement function, so the County bears no municipal liability and the official-capacity damages claims against Sheriff Davis are barred and duplicative. Even setting that bar aside, the Complaint pleads no cognizable policy, custom, failure-to-train, or ratification. And because a municipal-liability claim is derivative, it fails in any event once the underlying claims against the individual Officers fall.

### A. A Georgia Sheriff Acts as an Arm of the State, So the County Is Not Liable and the Official-Capacity Damages Claims Are Barred and Duplicative.

Count V fails against Sheriff Davis because a Georgia sheriff acts as an arm of the State in performing law-enforcement functions. Count V also fails against Macon-Bibb County because a county is liable under Section 1983 only for its own policies, and a Georgia county like Macon-Bibb has no authority over the sheriff's law-enforcement function. In *Grech v. Clayton County*, the Eleventh Circuit held that because a county "has no authority to direct or control the Sheriff in his law enforcement function," "the Sheriff is not a county policymaker for that function," and the county therefore bears no Section 1983 liability for the sheriff's law-enforcement conduct. 335 F.3d 1326, 1327 (11th Cir. 2003). Counties "have no authority or control over, and no role in, Georgia sheriffs' law enforcement function," do not train or supervise deputies, and play no part in hiring or firing them. *Id.* at 1336. Georgia courts have likewise concluded, with unanimity, that

a county is not liable for the law-enforcement actions of the sheriff or his deputies. *Id.* at 1337–1338.

The Eleventh Circuit's opinion in *Manders v. Lee* confirms the point. A Georgia sheriff "functions as an 'arm of the State'" and is entitled to Eleventh Amendment immunity when setting use-of-force policy and training and disciplining his deputies. *Manders v. Lee*, 338 F.3d 1304, 1305–1306 (11th Cir. 2003). Counties exercise no control over the sheriff's use-of-force policy, "whether in making arrests on the streets or in quelling disruptive inmates at the jail," because the sheriff's authority derives directly from the State. *Id.* at 1310–1311. In enforcing the laws and keeping the peace, the sheriff "directly represents the sovereignty of the State." *Id.* at 1313.

The doctrine remains controlling and is applied at the pleading stage. In *Myrick v. Fulton County*, decided in 2023, the Eleventh Circuit applied the four-factor *Manders* test and held that a Georgia sheriff acts as an arm of the State in creating force policy and training and disciplining officers, affirming dismissal of the official-capacity claims. *Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1294–1295, 1296 (11th Cir. 2023).

These principles dispose of Count V against both entity defendants. The Complaint seeks to hold Macon-Bibb County liable for the arrests, the handcuffing, and the training and supervision of the sheriff's deputies, which are quintessential law-enforcement functions for which the County has no Section 1983 liability. Doc. 1 ¶ 99; *Grech v. Clayton Cnty., Ga.*, 335 F.3d at 1327. The official-capacity damages claims against Sheriff Davis are barred by the Eleventh Amendment, which "remains in effect when State officials are sued for damages in their official capacity." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). And because an official-capacity suit "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," the official-capacity claims against Sheriff Davis—who is alleged to be a final policymaker

for the sheriff's office—are duplicative of the suit against the entity and should be dismissed. *Id.* at 165–166 (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 690 n.55 (1978)) (Doc. 1 ¶ 21).

**B. The Complaint Pleads No Cognizable Basis for Municipal Liability.**

Even if the Court does not resolve the arm-of-the-State question, Count V independently fails because the Complaint pleads no cognizable theory of municipal liability against the County. The recognized avenues to *Monell* liability are an unconstitutional official policy, a persistent and widespread custom, a failure to train amounting to deliberate indifference, and ratification, and the Complaint establishes none of them.

The governing standard is demanding. A local government is liable under Section 1983 only where its own policy or custom is the "moving force" behind the violation, and inadequate training supports liability "only where the failure to train amounts to deliberate indifference," that is, a "deliberate" or "conscious" choice by the municipality. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388–389 (1989). A custom, in turn, requires a practice so "persistent and wide-spread" that it carries the force of law, *Christmas v. Harris Cnty., Georgia*, 51 F.4th 1348, 1355–1356 (11th Cir. 2022). (quoting *Goebert v. Lee County*, 510 F.3d 1312, 1332 (11th Cir. 2007)), and the deprivations relied on must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Id.* (*quoting Keith v. DeKalb County*, 749 F.3d 1034, 1048 (11th Cir. 2014)).

1. <u>No Unconstitutional Official Policy.</u>

The only written policy the Complaint identifies is Macon-Bibb County Code § 15-26, which the Complaint alleges expressly permits the reasonable use of amplifiers for noncommercial public addresses, and which the County and Sheriff are alleged to have enacted and maintained. (Doc. 1 ¶¶ 23, 100). A lawful ordinance cannot be the "moving force" behind a constitutional

violation; the Complaint's own theory is that the Officers enforced a contrary unwritten rule, which describes individual deviation from the written policy rather than an official municipal policy. *City of Canton, Ohio v. Harris*, 489 U.S. at 388–389.

2. No Persistent, Widespread Custom.

The Complaint pleads no custom of the kind that can substitute for an official policy. Conclusory assertions of widespread abuse, and a handful of isolated incidents, do not suffice to show a practice so persistent and widespread that it has the force of law. *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1266–1267 (11th Cir. 2010). The Eleventh Circuit affirmed dismissal of a municipal-liability claim at the pleading stage where the plaintiff pleaded only his own incident plus a conclusory "information and belief" allegation of a broader pattern. *Sosa v. Martin Cnty., Fla.*, No. 20-12781, 2023 WL 1776253 (11th Cir. Feb. 6, 2023).

The Complaint here pleads even less of a pattern. It alleges only three enforcement episodes, all involving these same two Plaintiffs, rather than a widespread practice affecting the public. (Doc. 1 ¶ 64). Three encounters with the same individuals are the isolated occurrences that *Christmas* holds cannot establish a custom. *Christmas v. Harris Cnty., Georgia*, 51 F.4th at 1355–1356.

3. No Failure to Train Amounting to Deliberate Indifference.

The failure-to-train theory fails because the Complaint alleges no pattern that could establish deliberate indifference. A failure-to-train claim requires deliberate indifference, and "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary'" to show it. *Connick v. Thompson*, 563 U.S. 51, 62–64 (2011). (quoting *Board of County Commissioners v. Brown*, 520 U.S. 397, 409 (1997)) .

The Complaint identifies no such pattern and invokes no such obvious need. It alleges no prior adjudicated violations involving other people that would have put the County or the Sheriff on notice of a training deficiency, resting its theory instead on Plaintiffs' own encounters. (Doc. 1 ¶ 64)

4. No Ratification.

The ratification theory fails for the same want of supporting facts. Ratification requires a final policymaker to review and approve both the subordinate's decision and the unconstitutional basis for it before the decision becomes final, and a single failure to discipline is not the "persistent failure" a custom-by-ratification theory requires. *Salvato v. Miley*, 790 F.3d 1286, 1296–1297 (11th Cir. 2015). A failure to discipline, standing alone, is not ratification. *Thompson v. Sheriff, Pinellas Cnty. FL*, 542 F. App'x 826, 830 (11th Cir. 2013); *Hawk v. Klaetsch*, 522 F. App'x 733, 736 (11th Cir. 2013).

The Complaint alleges only that an Internal Affairs review marked a prior complaint "Not Sustained." (Doc. 1 ¶ 102). That disposition neither approves an unconstitutional basis for a subordinate's decision nor reflects a persistent, widespread practice, and it cannot support a ratification theory. *Salvato v. Miley*, 790 F.3d at 1296–1297.

**C. Absent an Underlying Constitutional Violation, There Can Be No Entity Liability.**

The entity claim fails for one more reason that follows directly from the preceding sections: because the individual Officers committed no constitutional violation, there can be no entity or official-capacity liability. "A *Monell* claim is derivative of—and so requires—an actual constitutional violation by an officer." *Land v. Sheriff of Jackson Cnty. Fla.*, 85 F.4th 1121, 1129 (11th Cir. 2023). There was no such violation here.

As the preceding sections show, the Officers had at least arguable probable cause to arrest and used only de minimis force, so no Plaintiff suffered a constitutional injury at their hands. The *Monell* count is pleaded as derivative of the same conduct underlying the individual claims, and it seeks to hold the County and Sheriff liable to the extent the alleged policies are attributable to them as final policymakers. (Doc. 1 ¶¶ 98-99). Because a derivative claim cannot survive the absence of an underlying injury, Count V fails as to both Macon-Bibb County and Sheriff Davis in his official capacity, regardless of any alleged policy. *Land v. Sheriff of Jackson Cnty. Fla.*, 85 F.4th at 1129; *Baker v. City of Madison, Alabama*, 67 F.4th at 1281–1282.

## V. Independent Threshold and Pleading Defects Require Dismissal of the Remaining Claims.

Two independent defects require dismissal of what remains of the Complaint. Plaintiffs lack Article III standing to pursue the prospective declaratory and injunctive relief sought in Count VI. Also, the claims against the supervisory defendants fail because the Complaint pleads no personal participation by any of them.

### A. Plaintiffs Lack Standing to Pursue Declaratory and Injunctive Relief (Count VI).

Plaintiffs lack Article III standing for prospective relief because they allege only past enforcement, not the real and immediate threat of future injury that equitable relief requires. A plaintiff seeking equitable relief must show a threat of injury that is "real and immediate," not "conjectural" or "hypothetical." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–102 (1983). "[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects." *Id.* at 102–103. (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–496 (1974)). In *Lyons*, the Supreme Court held

that a plaintiff's prior unlawful encounter with police "does nothing to establish a real and immediate threat" that he would again be subjected to the challenged conduct. *Id.* at 105–112.

Standing must be established separately for each form of relief. The Eleventh Circuit requires "a real and immediate — as opposed to a merely conjectural or hypothetical — threat of future injury" before a court may grant an injunction. *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994). Because standing is not "dispensed in gross," a plaintiff "must demonstrate standing for each claim and for each form of relief that is sought," so standing to seek damages for a past injury does not carry over to prospective relief. *J.W. by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1264 (11th Cir. 2018) (quoting *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017)). Even a plaintiff with standing to recover for past harm "must separately establish a threat of 'real and immediate' … future injury" before an injunction may issue, and a complaint alleging "only past harm" is insufficient at the pleading stage. *Williams v. Reckitt Benckiser LLC*, 65 F.4th 1243, 1253-54 (11th Cir. 2023).

The Eleventh Circuit has applied that rule to a plaintiff in Plaintiffs' exact position. In an unpublished decision, it held that a street preacher who had been threatened with trespass arrest lacked standing for prospective relief, because imminence of future harm from a past injury requires particularized allegations that a future injury "would likely occur in substantially the same manner as the previous injury." *LaCroix v. Lee Cnty., Fla.*, 819 F. App'x 839, 841–843, 844 (11th Cir. 2020) (quoting *Elend v. Basham*, 471 F.3d 1199, 1208 (11th Cir. 2006)).

The Complaint pleads only past injury and speculation about the future. It alleges three past enforcement episodes, all of which terminated in Plaintiffs' favor, and asserts a generalized "credible threat" of future enforcement and continuing chill. (Doc. 1 ¶¶ 58, 109). That is speculative, hypothetical future harm that *Lyons* rejects: Plaintiffs, who can conform their future

conduct to the law, cannot show that they will again be arrested for amplified preaching, and a damages remedy remains available for the past wrongs. *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d at 1269. Count VI should be dismissed for lack of standing.

### B. The Claims Against the Supervisory Defendants Fail for Lack of Personal Participation.

The claims against the supervisory defendants fail because Section 1983 imposes no respondeat superior liability, and each defendant is answerable only for his own conduct. A plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. at 675–676. In a Section 1983 suit, "the term 'supervisory liability' is a misnomer," because "[a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677. A pleading offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* at 677–678.

The Eleventh Circuit accordingly holds that a supervisor is not liable under Section 1983 on a respondeat-superior theory; liability requires either the supervisor's personal participation or a causal connection between his own action and the violation, and that standard is "extremely rigorous." *Myrick v. Fulton Cnty., Georgia*, 69 F.4th at 1297. Where a plaintiff does not allege personal participation, he must allege facts showing a causal connection—a history of widespread abuse, a custom of deliberate indifference, or a directive to the subordinates to act unlawfully—and these claims are routinely resolved on a Rule 12(b)(6) motion. *Id.* at 1296–1298. A single incident coupled with conclusory assertions that a supervisor was "on notice" or failed to adopt adequate policies does not state a claim. *Piazza v. Jefferson Cnty., Alabama*, 923 F.3d 947, 957–958 (11th Cir. 2019).

The Complaint supplies none of that. It alleges that supervisory defendant Scott Davis "approved, endorsed, supervised, or ratified" the enforcement, and it refers collectively to supervisors of various ranks, without alleging any defendant-specific conduct. (Doc. 1 ¶¶ 17, 43, 62). Those conclusory, group-based allegations do not state a claim, and Plaintiffs' supervisory liability claim must be dismissed.

## **CONCLUSION**

For the reasons provided herein, the Defendants request that this Court dismiss Plaintiffs' Complaint in its entirety, with prejudice.

Respectfully submitted this 20th day of November, 2026.

*<u>/s/ Christopher Gordon</u>*
DUKE R. GROOVER
Georgia State Bar No. 313225
CHRISTOPHER GORDON
Georgia State Bar No. 922377
DAVID S. CROMER
Georgia State Bar No. 918270

JAMES-BATES-BRANNAN-GROOVER-LLP
Post Office Box 4283
Macon, Georgia 31208
Phone: 478.742.4280
Fax: 478.742.8720
dgroover@jamesbatesllp.com
cgordon@jamesbatesllp.com
dcromer@jamesbatesllp.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served true and correct copies of the foregoing *Defendants' Motion to Dismiss* upon all parties via CM/ECF filing system upon the following:

Jordan Johnson
5 Dunwoody Park
Suite 100
Atlanta, GA 30338
Alex@justice.law
*Attorney for Plaintiff*

Respectfully submitted this 20th day of November, 2026.

*/s/ Christopher Gordon*
DUKE R. GROOVER
Georgia State Bar No. 313225
CHRISTOPHER GORDON
Georgia State Bar No. 922377
DAVID S. CROMER
Georgia State Bar No. 918270

JAMES-BATES-BRANNAN-GROOVER-LLP
Post Office Box 4283
Macon, Georgia 31208
Phone: 478.742.4280
Fax: 478.742.8720
dgroover@jamesbatesllp.com
cgordon@jamesbatesllp.com
dcromer@jamesbatesllp.com